UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANADIAN SILICA INDUSTRIES, INC.,

      Plaintiff,

                                    Case No. 1:20-cv-1229

v.

                                      Hon. Hala Y. Jarbou

SAND PRODUCTS CORPORATION,

      Defendant.

_____

GRAYMONT LLC

      Intervening Plaintiff,

v.

SAND PRODUCTS CORPORATION,

      Defendant.

_____/

## OPINION

      This diversity case between Plaintiff Canadian Silica Industries, Inc. ("CSI") and Defendant Sand Products Corporation ("SPC") concerns the parties rights and obligations under a lease agreement. Plaintiff Graymont LLC intervened in this action to assert claims of breach of an access agreement between Graymont and SPC ("Access Agreement"). The Court found that SPC breached Section 14 of the Access Agreement. (11/26/2022 Op., ECF No. 107.) Before the Court is Graymont's motion for entry of judgment as to the relief for this breach (ECF No. 111).

## I. BACKGROUND

      The facts of the case are summarized in the Court's November 26, 2022, opinion. Briefly, SPC owned and operated a sand business in Brevort, Michigan. The business comprised of

approximately 1,500 acres of land divided into four parcels: Parcel 1 includes an inactive sand reserve; Parcel 2 includes an active sand mine; Parcel 3 includes an entry point for a sand transport tunnel under State Highway US-2; and Parcel 4 sits along the shore of Lake Michigan and includes a processing plant as well as a dock or shipping terminal with loading equipment.  This case centers around a series of agreements between SPC, CSI, and Graymont concerning the Brevort property.

On December 31, 2014, SPC and Graymont executed a formal agreement, termed the "Access Agreement," which was to be effective for a period of 30 years.  (Access Agreement, ECF No. 14-1, PageID.348, 355.)  Under the Access Agreement, Graymont has a non-exclusive right to use the "SPC Facility"—a term the parties used to describe the collection of equipment and land on Parcels 3 and 4 that Graymont is entitled to use.  The Access Agreement refers to the entirety of the Brevort location, meaning Parcels 1-4, as the "SPC Property."  Section 14 of the Access Agreement governs the parties' rights with respect to assignment.   Under Section 14,

> [n]either party will assign or in any way transfer this Agreement or any part thereof without the prior written consent of the other party, not to be unreasonably withheld, conditioned or delayed . . . . In the event that SPC sells or otherwise assigns or transfers the SPC Property, the transfer will be subject to all terms of this Agreement and SPC will require the transferee to assume the obligations of SPC under this Agreement.

(*Id.*, PageID.358.)

Around 2016, SPC began exploring the possibility of selling its sand business.  SPC first approached Graymont as a potential buyer, but Graymont and SPC could not agree on a price.  In late 2016 and early 2017, SPC began negotiations with CSI.  The ultimate deal between SPC and CSI consists of three documents: the Lease, Purchase and Sale Agreement; the Lease Agreement; and the Royalty Agreement.  CSI purchased Parcel 2, received an option to purchase a portion of Parcel 1, and leased Parcels 3 and 4 on a non-exclusive basis.    CSI also agreed to pay SPC a

royalty for each ton of proppant sand extracted from the Brevort mine located on Parcel 2 and later sold.

In its November 26, 2022, Opinion, the Court found that SPC breached Section 14 of the Access Agreement by leasing Parcels 3 and 4 to CSI but not requiring CSI to assume the obligations of SPC.  (11/26/2022 Op., PageID.2303.)[1]   Graymont argues that the appropriate remedy for this breach is voiding the Lease Agreement between SPC and CSI.

## II. ANALYSIS

To prevail on a claim for breach of contract under Michigan law, the non-breaching party "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016).  "[C]ausation of damages is an essential element of any breach of contract action." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).[2]   Because proof of damages is essential to a breach of contract claim, "uncertainty as to the *fact* of legal damages . . . is fatal to recovery." *Wolverine Upholstery Co. v. Ammerman*, 135 N.W.2d 572, 576 (Mich. Ct. App. 1965); *see also ADR N. Am., LLC v. Agway, Inc.*, 303 F.3d 653, 660-61 (6th Cir. 2002) (relying on *Wolverine* to bar recovery for a breach of contract claim where the alleged damages were wholly speculative); *Auto Indus. Supp. Emp. Stock Ownership Plan v. Ford Motor Co.*, 435 F. App'x 430, 459 (6th Cir.

---

[1] The Court agrees with Graymont that SPC likewise breached Section 14 of the Access Agreement by not obtaining Graymont's "prior written consent" for the assignment or transfer.  (Access Agreement, PageID.358.)

[2] "According to some courts, a breach of contract claim requires a showing of appreciable and actual damage.  While it has been said that there must be a causal link between an alleged breach of contract and the injured party's damages, other courts do not state this in the form of a requirement but rather define 'breach' as an unjustified failure to perform all or any part of what is promised in a contract, entitling the injured party to damages."  23 Williston on Contracts § 63:5 (4th ed).  Michigan courts adhere to the former interpretation of a breach of contract claim.

2011) (finding that because the plaintiff had not proven that it had been damaged at all, the plaintiff could not make out its breach of contract claim).

Section 14 affords Graymont the ability "to withhold consent to a transaction that changed the parties using the SPC Facility or providing services to Graymont." (Graymont's Reply Br. in Supp. of Mot. for J., ECF No. 125, PageID.2387.) Graymont argues that "[b]y depriving Graymont of its right to reasonably withhold consent to the Lease, SPC executed the Lease and prevented Graymont from evaluating whether CSI could adequately perform the obligations under the Access Agreement." (*Id.*) However, Graymont has not demonstrated that it has suffered any sort of damages as a result of this deprivation of its right to withhold consent.

The change in parties using the SPC Facility has not resulted in damages to Graymont. Paul Stoll, Graymont's on-site manager, testified that Graymont and CSI have had a smooth working relationship:

> Q.  All right.  Have there been any issues at all for Graymont, from Graymont's perspective, with working with CSI at the Brevort Facility?
>
> A.  No.  I think that we have had a good working relationship with CSI.  We've -- we've had some concerns over activities at the dock with -- with respect to whether they are in position with our equipment.  But, I mean, overall, it's all right.

(Stoll Dep. 93, ECF No. 69-5.) Graymont has not otherwise shown any damages that have resulted from CSI's joint use of the SPC Facility.

Moreover, SPC's servicing obligations have been successfully performed by CSI personnel hired by SPC.  Since the Access Agreement took effect in 2014, Graymont has conducted two series of test shipments—once in November of 2018 and again in October of 2019.  (Stoll Dep. 45-46.)  After executing the Lease Agreement, former SPC employees were hired by CSI, and SPC no longer maintained any of its own permanent employees at Brevort.  (Musselman Dep. 80, ECF No. 64-4.)  Instead, SPC enlisted CSI personnel to successfully assist Graymont with the two

4

series of test shipments.  (Stoll Dep. 48.)  Stoll testified that Graymont knew CSI personnel

performed the services related to these test shipments:

> Q. With respect to the test loads that we talked about in 2018 and 2019, those loads
> were able to be performed with staffing that was provided by Sand Products, right?
>
> A. There was a ship loader that was provided.  He was a CSI employee, and also a
> dock security employee or worker that was also a CSI employee.  But my -- I guess
> my -- my assumption on that, since Sand Products is supposed to provide the
> person, is that they worked out some sort of deal with CSI to basically lease their
> employee for those boat-loading events.

(Stoll Dep. 47-48.)  Although Graymont now claims that it suffered damages by being denied the

ability to assess whether CSI could adequately perform SPC's obligations at the time the Lease

Agreement was executed, CSI has been performing SPC's obligations for years without objection

from Graymont.[3]

Section 49 of the Access Agreement does not allow Graymont to bypass its burden of

proving damages on its breach of contract claim.  Under Section 49, titled "equitable remedies,"

> [t]he parties agree that irreparable damage would occur if any provision of this
> Agreement were not performed in accordance with the terms hereof and that the
> parties will be entitled to equitable relief, including injunctive relief or specific
> performance of the terms hereof, in addition to any other remedy to which they are
> entitled at law or in equity.

(Access Agreement, PageID.368.)  In the context of a motion for a preliminary injunction, the

Sixth Circuit has found that a non-compete agreement containing a stipulation that any violation

---

[3] Graymont anticipated that it would begin shipments again in 2022 (Stoll Dep. 47, 49.)  SPC represented that

> [i]f and when Graymont plans to use the SPC Facility, Sand Products is ready, willing, and able to
> deploy personnel to Brevort, Michigan to provide the services called for under the Access
> Agreement, so long as Graymont provides advance notice of its shipping schedule as required.

(Canestraight Decl., ECF No. 76-2, PageID.1680.)  The Court's November 26, 2022, Opinion found that
there was a genuine dispute of material fact as to whether SPC has the resources necessary to provide the
services to Graymont in the future in accordance with Section 35(iv) of the Access Agreement.  (11/26/2022
Op., PageID.107.)  However, Graymont voluntarily dismissed this claim as premature.  (Stip. Order &
Dismissal, ECF No. 117.)

of the agreement would create irreparable harm does not presume the existence of such harm; rather, the harm must still be proven. *See Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 970 (6th Cir. 2002); *see also Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-cv-15189, 2014 WL 562264, at *9 (E.D. Mich. Feb. 13, 2014) ("Nexteer is not relieved of its obligation to prove irreparable harm by contractual provision, and Nexteer has failed to do so here.  Even if the court were to consider the contractual concession as one factor in support of preliminary injunctive relief, it is insufficient to establish irreparable harm.").  Similarly, here, a contractual provision stating that a breach of the Access Agreement would cause irreparable harm is insufficient to meet the burden of proving damages in a breach of contract claim.  In sum, Graymont has not demonstrated by a preponderance of the evidence that SPC's breach resulted in damages.

Finally, even if Graymont could demonstrate that it suffered damages as a result of SPC's breach, the Court would not grant equitable relief.  Equitable remedies are subject to the discretion of a district court.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.").  As an initial matter, Graymont fails to explain what form of equitable relief it seeks other than stating "[t]he only equitable relief that remedies SPC's breach of Section 14 is voiding the lease *ab initio*."  (Graymont's Br. in Supp. of Mot. for Entry of J., ECF No. 112, PageID.2321.)  It further does not show how voiding the Lease Agreement—a contract to which Graymont is not a party—would serve to remedy any sort of actual harm suffered by Graymont.  As stated above, Graymont has known of CSI's presence on the Brevort property for years, it has worked with CSI employees to successfully complete its previous test shipments, and the two have shared a smooth working relationship.  There is no discernable harm from SPC's breach.  Finally, Graymont cites no cases from either the Sixth

Circuit or district courts within the Sixth Circuit that have granted a similar form of relief under similar circumstances.   Thus, the Court is not persuaded that Graymont would be entitled to equitable relief.

## III. CONCLUSION

For the reasons stated above, the Court will deny Graymont's motion for entry of judgment as to the relief for SPC's breach of Section 14 of the Access Agreement, Count II of Graymont's complaint.   An order will enter consistent with this Opinion.

Dated: January 12, 2023                                          /s/ Hala Y. Jarbou
                                                                 HALA Y. JARBOU
                                                                 CHIEF UNITED STATES DISTRICT JUDGE